UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TODD GOLDBERG,<br><br>    Plaintiff,<br><br> v.<br><br>CENTRAL CREDIT MANAGEMENT, INC.,<br><br>    Defendant. | Case No. 2:11-cv-00305-MMD-GWF<br><br>ORDER<br><br>(Plf.'s Motion for Default Judgment<br>– dkt. no. 11) |

**I.   SUMMARY**

Before the Court is Plaintiff's Motion for Default Judgment. (Dkt. no. 11.) Defendant Central Credit Management, Inc. has not responded. For the reasons stated below, the Motion is granted in part and denied in part.

**II.   BACKGROUND**

This suit arises from the attempts at collecting an alleged debt. Plaintiff's Complaint alleges the following facts:

Sometime in December of 2006, Plaintiff allegedly incurred a financial obligation of approximately $3,000.00 as a cancellation fee for canceling on the purchase of an un-built timeshare in Cabo San Lucas called Casa Dorada. The timeshare company had kept Plaintiff's down payment of $12,900.00, but it continued to pursue Plaintiff for the "cancellation fee." Sometime after that cancellation, the "cancellation fee" debt was consigned, placed, assigned, or otherwise transferred to Defendant, Central Credit

1  Management, Inc., a Florida corporation and collection agency operating out of Miami,
2  Florida.  Defendant was not licensed to collect debt in the State of Nevada during the
3  course of events giving rise to this action.  Beginning in 2007, Defendant began making
4  a series of telephone calls to Plaintiff regarding the alleged "cancellation fee" and did not
5  send a validation notice within five days of its initial telephone contact with him as
6  requested.  Defendant's telephone calls continued despite Plaintiff's repeated requests
7  for them to stop.  On February 4, 2010, Plaintiff, through an attorney, sent a formal
8  written request to Defendant to stop all communications.  The letter was sent via certified
9  mail, return receipt requested, and was delivered and received by Defendant on
10 February 10, 2010.  Despite this, Plaintiff asserts that Defendant continued to pursue
11 and harass him with numerous telephone calls to his personal cell phone.

12 Plaintiff filed the instant suit on February 24, 2011, approximately one year after
13 the events described above.  Plaintiff's Complaint alleges actual damages in the form of
14 stress, anxiety, annoyance, anger, fear, frustration, upset, humiliation, embarrassment,
15 and other emotional distress, along with incurred attorneys' fees and costs.  Defendant
16 was served with the summons and complaint on March 23, 2011, with personal service
17 to Defendant's President.  Defendant has not appeared or answered.  On February 22,
18 2012, the Clerk of the Court entered default against Defendant.  Plaintiff now requests
19 default judgment against Defendant.

20 **III.   LEGAL STANDARD**

21 Obtaining a default judgment is a two-step process governed by the Federal
22 Rules of Civil Procedure.  *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986).  First,
23 "[w]hen a party against whom a judgment for affirmative relief is sought has failed to
24 plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk
25 must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after the clerk enters
26 default, a party must seek entry of default judgment under Rule 55(b).

27 Upon entry of default, the court takes the factual allegations in the non-defaulting
28 party's complaint as true.  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th

Cir. 1987) (citation omitted). Nonetheless, although entry of default by the clerk is a prerequisite to an entry of default judgment, "a plaintiff who obtains an entry of default is not entitled to default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (citation omitted). Instead, whether a court will grant a default judgment is in the court's discretion. *Id.*

The Ninth Circuit has identified the following factors as relevant to the exercise of the court's discretion in determining whether to grant default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to the excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

**IV.   DISCUSSION**

**A.   Procedural Requirements**

Plaintiff has satisfied the procedural requirements for default judgment pursuant to Fed. R. Civ. P. 55(b). First, the Clerk properly entered a default against Defendant pursuant to Fed. R. Civ. P. 55(a). (Dkt. no. 9.) Second, as a corporation, Defendant is not an infant or incompetent person, and is not otherwise exempt under the Soldiers' and Sailors' Civil Relief Act of 1940. Third, insofar as Defendant has not answered or otherwise responded to the Complaint, the notice requirement of Rule 55(b)(2) is not implicated. Thus, there is no procedural impediment to entering a default judgment.

**B.   *Eitel* Factors**

**1.   Possibility of Prejudice**

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if default judgment is not entered. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (S.D. Cal. 2002). Here, Defendant has not answered, made an appearance, or otherwise responded to the Complaint. Due to Defendant's refusal to appear in this action, there is the possibility of prejudice to Plaintiff in the absence of default judgment.

If Plaintiff's motion for default judgment is not granted, Plaintiff will likely be without other recourse for recovery. Thus, this *Eitel* factor weighs in favor of entering default judgment.

### 2. Substantive Merits and Sufficiency of the Complaint

The second and third *Eitel* factors favor a default judgment where the complaint sufficiently states a claim for relief under the "liberal pleading standards embodied in Rule 8" of the Federal Rules of Civil Procedure. *Danning v. Lavine*, 572 F.2d 1386, 1389 (9th Cir. 1978); *see also* Fed. R. Civ. P. 8. Here, Plaintiff asserts the following claims: (1) violations of the Fair Debt Collection Practices Act ("FDCPA"); (2) invasion of privacy; and (3) consumer fraud.

#### a. FDCPA

First, Plaintiff alleges several violations of the FDCPA, including 15 U.S.C. § 1692c(c), 1692(d), 1692e(5, 10, 11), and 1692(g).[1] Section 1692c(c) provides that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except" in limited circumstances. Section 1692(d) provides that "[a] debt collector may not engage in any conduct . . . which is to harass, oppress, or abuse any person in connection with the collection of a debt," which includes "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number" or "the placement of telephone calls without meaningful disclosure of the caller's identity." Section 1692e provides that a debt collector may not use false, deceptive, or misleading representations to collect a debt. In particular, this section states that a debt collector may not threaten "to take any action that cannot legally be taken or that is not intended to be taken," or "use of any false representation or deceptive means to collect or attempt

---

[1] Plaintiff's Motion identifies several other sections that may have been violated. However, the Court only considers the allegations pled in the Complaint.

4

to collect any debt or to obtain information concerning a consumer." *Id.* at § 1692e(5, 10). Further, any debt collector whose initial communication is oral must disclose that "the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose" and also disclose in future communications that "the communication is from a debt collector." *Id.* at § 1692e(11). Section 1692(g) provides that:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Here, Plaintiff has adequately alleged violations of each of these sections. The Complaint alleges that Plaintiff sent written notice to the Defendant to cease communications and Defendant continue to contact Plaintiff on at least 36 more occasions by calling him on the telephone. Plaintiff also alleges that the debt was not valid, Defendant had no right to collect the debt, and Defendant used deceptive means to collect the alleged debt. Further, Plaintiff alleges that Defendant's agents did not identify themselves as debt collectors as required by statute and that Defendant never sent written notice after the initial communication. Therefore, Plaintiff has adequately stated a claim for violations under the FDCPA and factor two favors granting default judgment on this claim.

///

### b. Invasion of Privacy

"To recover for the tort of intrusion, a plaintiff must prove the following elements: (1) an intentional intrusion (physical or otherwise); (2) on the solitude or seclusion of another; (3) that would be highly offensive to a reasonable person." *People for Ethical Treatment of Animals v. Bobby Berosini, Ltd.*, 895 P.2d 1269, 1279 (Nev. 1995). Plaintiff's Complaint contains no factual averments relating to any element of this cause of action. At best, the Complaint contains a bare recital of only two elements of the claim. Thus, Plaintiff fails to state a claim for invasion of privacy under Nevada law and factor two weighs against granting default judgment on the intrusion claim.

### c. Consumer Fraud

Plaintiff alleges consumer fraud arising from deceptive trade practices because Defendant was not licensed to do business in Nevada pursuant to NRS § 649.075. "An action may be brought by any person who is a victim of consumer fraud." To sustain a cause of action for consumer fraud, a plaintiff must prove that "(1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff." NRS § 41.600(1); *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009). "Consumer fraud" includes "[a] deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive." NRS§ 41.600(2)(e). Under Nevada law, conducting business without all required state, county, or city licenses amounts to a deceptive trade practice. NRS § 598.0923(1). Here, Plaintiff has pled and shown that Defendant was required to be licensed to collect debt in Nevada and Defendant was not licensed. However, Plaintiff has not adequately pled damages. Plaintiff's Complaint contains no factual averments relating to the emotional damages claimed. At best, Plaintiff's Complaint contains legal conclusions that Defendant's actions caused "anger, anxiety, emotional distress, fear, frustration, upset, humiliation, [and] embarrassment, amongst other negative emotions." Thus, Plaintiff fails to state a claim for consumer fraud under Nevada law and this factor disfavors granting default judgment on the deceptive trade practices claim.

///

### 3. Sum of Money at Stake

Under the fourth *Eitel* factor, the Court considers "the amount of money at stake in relation to the seriousness of [a defendant's] conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "This requires that the court assess whether the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010).

Plaintiff seeks $64,800.00 in actual damages for emotional distress and $1000.00 in statutory damages under the FDCPA, $36,000.00 in actual damages for emotional distress for invasion of privacy, $36,000.00 in general damages and $108,000.00 in punitive damages for consumer fraud,[2] and statutory attorneys' fees and costs as to all claims as applicable by statute. Under the FDCPA claim, while the Court holds there is some amount of money at stake and Defendant violated the statute, the recovery sought is not proportional to the harm. The fourth *Eitel* factor weighs in favor of entry of default judgment on the FDCPA claim, but not to the full extent Plaintiff requests as discussed below.

### 4. Possible Dispute

The fifth *Eitel* factor considers the possibility of dispute as to any material fact in the case. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Id.* Accordingly, no genuine dispute of material facts would preclude granting Plaintiff's motion on the FDCPA claim. However, this factor disfavors default on the state law claims as Plaintiff has not adequately pled those causes of action.

### 5. Excusable Neglect

The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. The evidence shows that

---

[2]Plaintiff has failed to adequately state a claim for relief for his state law claims, thus the Court declines to award emotional or punitive damages for these claims.

7

Luis Torres, President of Central Credit Management and an officer capable of receiving service on behalf of the company, was served with the Summons and Complaint on March 23, 2011, pursuant to Fed. R. Civ. P. 4(f).  (Dkt. no. 5.)   Defendant received service of the Summons and Complaint eleven months before the Clerk's Entry of Default on February 22, 2012.  (Dkt. no. 9).  Thus, given the extended period of time during which Defendant had notice of the Complaint and in which Defendant failed to answer or otherwise respond to the Complaint, it is unlikely that Defendant's failure to respond and subsequent default resulted from excusable neglect.

### 6. Decision on the Merits

The seventh *Eitel* factor states that "[c]ases should be decided upon their merits whenever reasonably possible."  *Eitel*, 782 F.2d at 1472.  However, the "mere existence of [Rule 55(b)] demonstrates that this 'preference, standing alone, is not dispositive.'" *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (citation omitted).  Moreover, Defendant's failure to answer Plaintiff's Complaint makes a decision on the merits impractical, if not impossible.  Thus, the Court is not precluded from entering default judgment against Defendant.

In sum, the *Eitel* factors weight in favor of default judgment on Plaintiff's FDCPA claim, but not on Plaintiff's two state law claims.

### C. Damages

There exists no Ninth Circuit precedent regarding how to properly calculate emotional damages awards under the FDCPA.  District courts are split on the issue. Some district courts require plaintiffs to prove the equivalent of a state law outrage tort, while others impose a lesser burden of establishing "significant harm."  *Compare Costa v. Nat'l Action Fin. Serv.*, 634 F. Supp. 2d 1069, 1078 (E.D. Cal. 2007) (holding state tort elements the lodestar), with *Riley*, 631 F. Supp. 2d 1295, 1315 (E.D. Cal. 2009) (holding that the FDCPA creates a federal standard).  The Court need not select among these competing interpretations, because it finds that Plaintiff cannot satisfy even the more lenient "significant harm" standard.

Significant harm must amount to more than "[f]leeting or trivial anxiety or distress." *Dawson v. Wash. Mut. Bank*, 390 F.3d 1139, 1149 (9th Cir. 2004). Plaintiff offers no facts to support his actual damages request. Rather, Plaintiff merely provides a conclusory allegation that Defendant's calls caused him to experience "anger, anxiety, emotional distress, fear, frustration, upset, humiliation, [and] embarrassment, amongst other negative emotions." (Dkt. no. 1, Compl. at ¶ 21). While the calls may have been annoying, the Complaint does not allege that the calls were threatening. Save for the single perfunctory allegation, Plaintiff has not shown that he has endured any emotional harm.

Under the FDCPA, statutory damages are available regardless of whether the plaintiff suffers any actual harm. *Baker v. G.C. Services Corp.*, 677 F.2d 775, 780 (9th Cir. 1982). A FDCPA violation establishes the plaintiff's eligibility for statutory damages. In determining the amount of damages, a court must weigh: (1) the frequency and persistence of non-compliance; (2) the nature of the non-compliance; and (3) the extent to which the non-compliance was intentional. 15 U.S.C. § 1692k(b)(1).

Here, even after receiving a cease and desist letter, Defendant continued to contact Plaintiff. Defendant continued to call Plaintiff for the "cancellation fee," and has contacted Plaintiff leaving no less than 37 voicemail messages from February 8, 2010, to the date of Plaintiff filing this Motion. The calls were made during hours Defendant knew Plaintiff was at work and Defendant called from multiple numbers, presumably in an attempt to dupe Plaintiff into answering the call. Considering the frequency, nature, and intentionality of Defendant's actions, the Court awards the Plaintiff $1,000 in statutory damages, the maximum statutory award. *Nelson v. Equifax Info. Servs.*, LLC, 522 F. Supp. 2d 1222, 1238 (C.D. Cal. 2007) (holding that statutory damages are limited to $1,000 per lawsuit).

**D.    Attorney's Fees**

Finally, the entry of default judgment on Plaintiff's FDCPA claim entitles Plaintiff to an award of reasonable attorney's fees and costs. 15 U.S.C. § 1692k(a)(3). However,

the Court is unable to determine attorneys' fees and costs at this time because Plaintiff does not detail reasonable rate, reasonable hours expended, or total attorneys' fees and costs demand.

**V.     CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff's Motion for Default Judgment is GRANTED as to Claim 1 and DENIED as to Claims 2 and 3.  The Clerk of the Court shall enter judgment against the Defendant in the amount of $1000.00.

IT IS FURTHER ORDERED that Plaintiff shall have thirty (30) days from the entry of judgment to file a motion for attorneys' fees that complies with Local Rule 54-16.

DATED THIS 3rd day of December 2012.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE